IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DOVIE STEWART
o/b/o DANIEL STEWART, deceased                                                    PLAINTIFF

       v.       Civil No. 2:12-cv-02158-RTD-JRM

CAROLYN W. COLVIN,[1] Commissioner of
Social Security Administration                                                    DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    Factual and Procedural Background**

Plaintiff, Dovie Stewart, brings this action on behalf of Daniel Stewart, her late husband, seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("the Act"). 42 U.S.C. ch. 7, subchs. II, XVI.

Daniel Stewart protectively filed his applications on June 16, 2010, alleging a disability onset date of March 4, 2009, due to severe stomach pain, lightheadedness, vomiting, low electrolytes, and headaches. Tr. 10, 139, 178. On the alleged onset date, he was twenty-six years old, a younger individual, with a ninth grade education. Tr. 29, 34, 140.

Mr. Stewart's applications were denied at the initial and reconsideration levels. Tr. 57-63, 67-70. At his request, an administrative hearing was held on March 30, 2011. Tr. 20-43. Mr.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

Stewart was present at this hearing and represented by counsel. The Administrative Law Judge ("ALJ") rendered an unfavorable decision on April 18, 2011, finding the claimant was not disabled within the meaning of the Act. Tr. 19-30. Subsequently, Mr. Stewart passed away on July 22, 2011, in an accident unrelated to his alleged impairments. Tr. 14. Thereafter, Plaintiff elected to file a survivor's claim on behalf of Mr. Stewart. Tr. 11-13. The Appeals Council denied Plaintiff's Request for Review on March 17, 2012, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Plaintiff now seeks judicial review of that decision.

## II.     Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months.

*Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. §§ 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

### III.   ALJ's Determination

At step one, the ALJ determined Mr. Stewart had not engaged in substantial gainful activity since March 4, 2009, the alleged onset date. Tr. 24. At step two, the ALJ found Mr. Stewart suffered from the following severe impairments: gastric ulcers and post duodenal rupture repair. Tr. 24-25. At step three, he determined Mr. Stewart did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 25.

At step four, the ALJ found that Mr. Stewart had the RFC to perform the full range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Tr. 25-29. With these limitations, the ALJ determined Mr. Stewart could not perform any of his past relevant work. Tr. 29. However, relying on Medical-Vocational Rule 202.17, the ALJ found that Mr. Stewart could perform jobs

existing in significant numbers in the national economy. Tr. 29-30. Accordingly, the ALJ concluded Mr. Stewart was not under a disability from March 9, 2009, the alleged onset date, through April 18, 2011, the date of the administrative decision. Tr. 30.

**IV.   Discussion**

On appeal, Plaintiff contends the ALJ erred by: (A) improperly determining the claimant's RFC; (B) improperly dismissing the claimant's subjective complaints; (C) failing to fully and fairly develop the record; and (D) relying on the Medical-Vocational Guidelines to determine that the claimant was not disabled.[2] *See* Pl.'s Br. 7-17. The Commissioner responds that substantial evidence supports the ALJ's decision. *See* Def.'s Br. 5-15. For the following reasons, the undersigned finds that substantial evidence supports the ALJ's determination.

A.  RFC Determination

First, Plaintiff contends the ALJ did not properly evaluate the medical or opinion evidence. *See* Pl.'s Br. 13-16. At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination.

---

[2] The undersigned has condensed and reordered Plaintiff's arguments.

*Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

### 1. Medical Evidence

Plaintiff argues that the ALJ did not include all of the claimant's impairments, including fatigue, pain, the need for frequent bathroom breaks, and resulting absenteeism, in his RFC determination. *See* Pl.'s Br. 16. The medical evidence simply does not support the severity of Plaintiff's alleged limitations.

On April 5, 2009, Mr. Stewart presented to the emergency room at Johnson Regional Medical Center with complaints of severe abdominal pain, nausea, and vomiting after having consumed seventeen or eighteen beers the night before. Tr. 198, 215-254. He underwent an emergency exploratory laparotomy with subsequent repair of a large perforation of the distal stomach and proximal duodenum. Tr. 186, 196-197, 215-254. On April 13, 2009, Mr. Stewart underwent closure of the abdominal wound and removal of the drain. Tr. 194, 222. He was discharged from the hospital on April 14, 2009, after being counseled on smoking and drinking. Tr. 215.

Following surgery, Mr. Stewart developed a partial stricture of the distal duodenum secondary to perforation repair. Tr. 185, 193. J. David Goodman, M.D., recommended conservative therapy and followup in three months. Tr. 185.

On June 22, 2009, after presenting to the emergency room with complaints of severe right-sided abdominal pain, Mr. Stewart underwent an emergency appendectomy. Tr. 184, 188-192, 273-274. On June 29, 2009, Dr. Goodman noted that he had "done well since that time." Tr. 184. However, Dr. Goodman noted a questionable incisional hernia developing in the epigastric area above the umbilicus. Tr. 184.

On September 29, 2009, Dr. Goodman noted that Mr. Stewart was doing "fairly well" on Ranitidine. Tr. 204. He detected no definite herniation and noted that Mr. Stewart's incision looked better. Tr. 204. At this time, Dr. Goodman released Mr. Stewart back to work with no restrictions. Tr. 204.

Mr. Stewart was treated in the emergency room on various occasions for abdominal pain. On March 9, 2010, he presented to Johnson Regional Medical Center with complaints of abdominal pain. Tr. 338. An esophagogastroduodenoscopy ("EGD") revealed a gastric ulcer at the greater curvature of the stomach, a hiatal hernia, and bile gastritis. Tr. 338. Mr. Stewart was treated with Protonix, Carafate, Omeprazole, Darvocet, and Phenergan, and instructed to followup in three weeks. Tr. 338, 342.

Although Mr. Stewart's medical records reveal frequent trips to the emergency room, he was treated conservatively with medication and regular checkups. *Moore v. Astrue,* 572 F.3d 520, 525 (8th Cir. 2009) (an impairment that can be controlled through treatment or medication cannot be considered disabling). In fact, following the claimant's surgeries, no physician recommended anything more than medication, followup appointments, and lifestyle changes. Dr. Goodman, Mr. Stewart's surgeon, released the claimant back to work on September 29, 2009, with no physical restrictions. Tr. 204. If Mr. Stewart were truly disabled, it is unlikely that his treating physician would release him back to work at full activity. Finally, as the ALJ noted, many emergency room visits might have been prevented had the claimant consistently taken his medication. *Wagner v. Astrue,* 499 F.3d 842, 852 (8th Cir. 2007) (medical noncompliance). For these reasons, the medical evidence supports the ALJ's determination that Mr. Stewart could perform the full range of light work.

*2. Opinion Evidence*

Plaintiff also asserts that because the ALJ attributed little weight to the opinions of the non-treating, non-examining agency physicians, he had no medical findings on which to rely. *See* Pl.'s Br. 7. This argument has no merit. The ALJ afforded little weight to the opinions of the state agency consultants because he determined they did not adequately consider the claimant's subjective complaints and the combined effects of his impairments. Tr. 29. "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari,* 274 F.3d 1211, 1219 (8th Cir. 2001). Moreover, even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. *Cox v. Astrue,* 495 F.3d 614, 619-20 (8th Cir. 2007). The ALJ explicitly stated that when determining the claimant's RFC, he afforded substantial weight to the findings and opinions of Mr. Stewart's treating physicians, none of whom found Mr. Stewart disabled. Tr. 29. After reviewing the evidence of record, the undersigned concludes that substantial evidence supports the ALJ's RFC determination.

B. <u>Credibility</u>

Plaintiff contends the ALJ improperly dismissed Mr. Stewart's subjective complaints and overall credibility. *See* Pl.'s Br. 9-13. When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v.* Astrue, 578

F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792).  However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole.  *Id.*  A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain."  *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints."  *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)).  Contrary to Plaintiff's assertion, the ALJ properly considered the claimant's subjective complaints and dismissed them for legally sufficient reasons.

With regard to activities of daily living, the ALJ noted that Mr. Stewart indicated he was able to dress, bathe, attend to personal hygiene, care for the family pet, do dishes, prepare meals, make his bed, do laundry, shop for groceries, and drive a vehicle (if he had a license).  Tr. 27, 40-41, 48-49, 150-157.  *Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010) (claimant's allegations of employment-related difficulties were inconsistent with her ability to travel, visit friends, go shopping, and care for her activities of daily living).  Several medical reports also indicate that the claimant's activities of daily living were not as limited as alleged.  For example, less than one month after his duodenal repair surgery, Mr. Stewart reported injuring himself "pulling on a stuck boat anchor."  Tr. 256.  Similarly, in January 2010, the claimant injured himself "while cutting wood," and in March 2010, the claimant injured himself "at work, lifting something heavy."  Tr. 301, 339, 341.  Such activities are simply inconsistent with allegations of total disability.

The ALJ also noted the fact that Mr. Stewart did not consistently take his medication and failed to quit smoking and binge drinking despite his physician's medical advice. Tr. 27. *Guilliams v. Barnhart,* 393 F.3d 798, 802-03 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility."). Moreover, although Mr. Stewart alleges he could not afford regular treatment or medication, he did not provide any evidence that he sought treatment at any low-cost clinics or charitable organizations in the area or was denied medical care due to his financial situation. *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992).

Additionally, the ALJ noted that the claimant reported that he stopped working as of April 6, 2009; however, multiple hospital admission records and treatment notes indicate that Mr. Stewart may have continued working after his alleged onset date. Tr. 28, 339, 341. *See Gregg v. Barnhart,* 354 F.3d 710, 713 (8th Cir. 2003) (claimant's ability to work part-time belied a finding of total disability). Finally, the ALJ found that Mr. Stewart's subjective complaints were simply inconsistent with the objective evidence in the record, which showed improvement following his duodenal repair surgery. Tr. 26-27. *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's complaints).

Here, the ALJ cited the proper standard, considered the factors in conjunction with the claimant's testimony, and then properly discounted his subjective complaints. *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are supported by valid reasons and substantial evidence"). For these reasons, substantial evidence supports the ALJ's credibility analysis.

C.  Development of the Record

Plaintiff argues that the ALJ should have sent Mr. Stewart for a consultative examination, or, alternatively, sought additional clarification from his treating physicians. *See* Pl.'s Br. 7-9.  The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998).  "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician. *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000).  While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)).  There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis.  *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

In this instance, the undersigned finds that the ALJ fully and fairly developed the record.  An ALJ is not required to order a consultative evaluation; he "simply has the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Matthews v. Bowen,* 879 F.2d 422, 424 (8th Cir. 1989); *see also Haley v. Massanari,* 258 F.3d 742, 749 (8th Cir. 2001) (ALJ need not order additional examinations if there is substantial evidence in the record to make an informed decision).  Additionally, an ALJ is only required to recontact a treating physician if a critical issue is undeveloped. *Johnson v. Astrue,* 627 F.3d 316, 320 (8th Cir. 2010).  Here, the record contained sufficient information, including the claimant's subjective reports, hospital

admission records, multiple diagnostic tests, and clinic records, for the ALJ to make an informed decision. As such, there was no critical undeveloped issue or ambiguity that would give rise to a duty to recontact a treating physician or schedule a consultative examination.

The ALJ had sufficient evidence to rely on in making his RFC determination. *See Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (rejecting argument that ALJ failed to fully and fairly develop the record where there was no indication that the ALJ was unable to make RFC assessment). Moreover, Plaintiff has demonstrated no prejudice or injustice as a result of this alleged failure to develop the record. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (unfairness or prejudice is necessary for a reversal due to failure to develop the record). Accordingly, the undersigned finds that the ALJ satisfied his duty to fully develop the record.

### D. Medical-Vocational Guidelines

Lastly, Plaintiff contends the ALJ erred in relying on the Grids alone to determine Mr. Stewart was not disabled. *See* Pl.'s Br. 16-17. The Eighth Circuit has previously explained:

> When a claimant suffers from exertional and nonexertional impairments, and the exertional impairments do not warrant a finding of disability, the ALJ must consider the extent to which the nonexertional impairments further diminish the claimant's work capacity. If the claimant's characteristics do not differ significantly from those contemplated in Medical-Vocational Guidelines, the ALJ may rely on the Guidelines alone to direct a finding of disabled.

*Lucy v. Chater,* 113 F.3d 905, 908 (8th Cir. 1997) (citation omitted). In other words, "an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." *Thompson v. Bowen,* 850 F.2d 346, 349-50 (8th Cir. 1988).

Here, the ALJ considered Mr. Stewart's nonexertional impairments, but determined that they did not diminish his capacity to perform the full range of activities listed in Medical-Vocational Rule 202.17.  20 C.F.R. pt. 404, subpt. P, app. 2.  Substantial evidence supports this finding.  As such, the undersigned finds that the ALJ met his burden at step five of the disability evaluation and vocational expert testimony was not required.

### V.     Conclusion

Accordingly, having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's decision and recommends that the decision be affirmed and Plaintiff's case be dismissed with prejudice.  **The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

ENTERED this 11th day of June 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE